Good morning. Good morning. Can you hear me well, Your Honors? Yes. Thank you. How do you pronounce your client's name? My understanding is that it's Udon Lertjanthuk. Lertjanthuk. Okay. And I'll try to refer to him as my client. May I please the Court? My name is Alexander Gelberg, and I represent the petitioner in this case, Mr. Udon Lertjanthuk. Before I begin my remarks, I would like to thank the Court for the opportunity to appear in person in this pro bono case. It's an honor and privilege. Thank you. I would like to reserve two minutes for rebuttal. Your Honors, this appeal center is How much time do you want to reserve? Two minutes. Two minutes. Okay. Yes. Your Honors, this appeal center is on two main issues. The failure of the agency to perform proper competency review, and second, failure to recognize that my client suffered past persecution on account of protected ground. Well, just to cut right to the chase, since we don't have a lot of time here, it seems to me you've got two big issues here. Number one is what's the role of the village chief in the governmental structure, if any, and whose burden is it to show that structure? And then, of course, you've got the issue that the chief shot your client, but your client says it might have just been an accident, and he has no idea what brought the gang of other people that beat him up. It's all his burden of proof. So can you clarify those? What is a village chief? What did your client do to show that he was a governmental official? Yeah. Your Honor, you're totally right. The issue of whether a village chief is a governmental official is one of the central issues in this case, and it's unfortunate that the IJA got it wrong. It's sort of a fundamental truth. It's a fundamental fact of, you know, Thailand's political system that this is a local government official, and we submit that it is, number one, apparent from the title, and number two. Well, wait a minute. Wait a minute. With respect, I don't think that's right. You can say somebody's a chief, but that doesn't make them a governmental official. Is there an organizational chart? Is there anything that you can show us that under Thai law and Thai government that a village chief, and particularly this village chief, was a governmental official? And, Your Honor, as part of the administrative record, no. There is nothing in the administrative record that would show the governmental chart, but the administrative record strongly suggests, and in particular the testimony of my client suggests, that the village chief is a governmental official. And as part of testimony, so the interpreter was translating that the respondent said, my uncle worked for the government and the big person of the village. There's also evidence, and my client testified that police belonged to the chief of village. There's another piece of evidence, and it comes up in the Osborne Report, the forensic psychologist. My client, he asserted that an uncle and his brother had worked for a Thai government that murdered them. So all this evidence strongly suggests that village chief and his subordinates are government officials. Well, with respect, I understand that's what your client has alleged. But as you might appreciate, we get a lot of cases where people claim that the government's involved, and it's a family dispute or there's a robbery or something of that nature, and there really is no governmental entity involved. Let's just assume for a minute that the village chief is a government official. How do you deal with the issue that your client, by his own words, he doesn't know whether the chief shot him by accident. He thought he was drunk or whatever, and that the other people, the thugs who beat him up, he has no idea why they attacked him. How does that tie into a protected status under the law that ties back to the government? So there are two things that I would like to address. One thing is, aside from the situation, the isolated incident when my client was shot, once we establish that the chief is a government official, so are his subordinates, we're in the Navas versus INS world, which says that when family members are violently attacked by government forces, the inference is that this is done on account of political opinion. I don't think so, counsel. You know, your client has the burden of proof. I'm not agreeing that this guy is the chief, but let's say he is. Your client did not say that he was shot by the chief because of his political beliefs or his family connection. He thinks he might have been, but he doesn't know and he doesn't allege it. He was beaten up by these other people who he thinks came from the chief, but he doesn't know that. He doesn't know why they attacked him. It's his burden to show that it's his, you know, it's a statutorily protected ground as a reason for his being attacked, and he doesn't say that. He doesn't indicate why. He doesn't know why he was attacked. I'll just note, Your Honor, that he's, I mean, he probably doesn't know exactly why he's trying to be truthful, and the IJA indicated that my client was credible and credited the facts. But regarding the inference, I would just want to emphasize that this is a statement of law in Navis versus INS, that in this particular circumstance, when the family members are attacked, violently attacked by government forces, the inference is that it is on account of political opinion. And then the table is turned on the government to disprove that because there's a presumption. If you establish past persecution, future persecution is presumed, and the tables are turned to the government. Isn't that usually when the family's political opinion is known, though? And I can't even figure out really what the political opinion here was. I can't even quite figure out whether the village chief agreed with the national government or not, whether he was working for both or whether the uncle was working for both the national government and the village chief or just the national government. It's very confusing even what the alignment here was. Yes, I mean, I totally agree with you. This is not very clear from an administrative record. So how can we assume that there's political opinion at issue? Maybe they just weren't paying him enough, or, I mean, I have no idea what was going on with why he was working or not working for the village chief. I mean, I understand, Your Honor. I think what the agency did goes along the lines of this argument that we don't really know, and the agency actually goes into the record and starts speculating of what those particular instances could mean and would indicate, but there's just no evidence that. But didn't your client state that if he went back to Thailand, there is no reason to believe that the government of Thailand would want him harmed? That's his own statement. I think he stated that he is not completely sure if he would be persecuted by the government in the future, but that's a separate issue from post-persecution. Well, I'm looking at the decision of the immigration judge, and he makes factual findings, which I think were well-supported by the record. You might disagree with which way he came out, and he says, quote, this incident happened 28 years ago. We do not know why, what motivated it, or what inspired it. So the court is left with nothing to figure out whether these same people would still want to go after the respondent 28 years later, and the respondent testified that if he went back to Thailand, there is no reason to believe the government of Thailand would want him harmed. So the respondent has failed to meet his burden establishing that it's more likely than not that he would be tortured by the government of Thailand or with the government's acquiescence. Now, what in that recitation is clear error? What in those findings of fact do you say are not supported by substantial evidence or are plain error or anything like that? I think our position, Your Honor, if we take this situation step-by-step and look at post-persecution, once we establish post-persecution, future persecution is presumed, and it would turn on the government to disprove it. And the IJ just never analyzed the case via those lens, via rebutting the presumption that the future persecution is established. I see, Your Honor. You're actually over your time. We'll give you a slight bit of time to respond to us. This is new to you, I know. So do any of my colleagues have any immediate questions? Okay, let's hear from the government. Thank you very much. We'll give you a minute since this is your first up here, I think. So we'll give you a shot, okay? All right, let's hear from the government. Good morning again, Your Honors. May it please the Court, Rhea Dharwan again on behalf of the Attorney General. In this case, Your Honors, the petitioner, Mr. Lerjanthuk, failed to meet his burden to prove eligibility for asylum, withholding of removal or protection under the Convention Against Torture. And as Your Honors have identified, there are central issues here, namely nexus as well as the likelihood of future persecution or likelihood of torture. With respect to nexus, there were three relevant incidents described in the record. With regards to Mr. Lerjanthuk himself, there was a shooting by the village chief as well as that beating by a group of individuals. They were at least a year apart. There was no context or information as to the beating. With respect to the shooting by the village chief, certainly as Your Honors have identified, the record does show that it was an accident. It was a drunken accident in which the village chief was waving around his gun. And I think Mr. Lerjanthuk's own words and testimony undermine his ability to meet his burden of proof here. In his testimony, he stated that the evidence regarding the beating was essentially that out of nowhere he was beaten by individuals who he believed were affiliated with the village chief. They did not say anything to him. He did not know why the beating occurred. And the immigration judge, knowing that this was an issue or a topic that was important, did ask him several times to try and elaborate. And Mr. Lerjanthuk did not state he couldn't recall. He just stated he did not know the motivations in those scenarios. With respect to the immigration judge's decision, the immigration judge did assess all the evidence and made several conclusions that showed definitively how not definitive the evidence was. The immigration said that the shooting was, quote, unclear and could have been an accident. The immigration judge said the record lacked information, quote, unquote, as to why Mr. Lerjanthuk was beaten up. The immigration judge said there was, quote, not enough information to show that the beating was motivated by a protected ground rather than, quote, personal reasons. So this simply does not add up to evidence that would compel reversal of the agency's findings here. Could I ask you about the CAT claim? Certainly. It seems like the agency's resolution of the CAT claim turned on the idea that the village chief is not a government official. Do you agree with that? The immigration judge did delineate between the Thai government and the village chief. I believe that the immigration judge's words were, there is no evidence that the government of Thailand condoned or otherwise acquiesced in the beating, and then continued on to discuss that there was really no evidence that it would be more likely than not that Mr. Lerjanthuk would be tortured. But in essence, Mr. Lerjanthuk's own words were not very clear regarding what the role of the village chief was. It seemed as if there was a delineation between the uncle, who worked for the Thai government, and the village chief who wanted the uncle to come work for him instead, and that led to the dispute over loyalty or employment, whatever you'd like to call it. So in essence, there is simply not enough evidence to put that village chief within the category of a public official for purposes of acquiescence under the CAT. How are we supposed to think about that? It sounds like a village chief is probably at least a local government official. Well, a village chief could be many things. A village chief could be appointed by the people in that neighborhood or in that community. And what case law tells us that someone appointed by the neighborhood to lead the neighborhood isn't a government official for purposes of CAT? Well, we, in this record, the court's review today must look at the evidence in the record. And I believe in Petitioner's opening brief, he addresses extra record evidence, that is a Wikipedia article that is not relevant. But for the immigration judge, who is the fact finder and relying on the facts and evidence, the immigration judge simply relied on those facts to make the determination that the village chief, there was not enough evidence to show that the village chief was in any way related to the Thai government. How do we know they have to be? So what I'm wondering is, it seems like in our country we have local government, we have national government. Is there a case that tells us that CAT only worries about the national government? Well, I think CAT reflects a discussion of the public official or someone conducting official duties. So I'm just wondering whether the assumption that it matters that he wasn't the same as the national government is a relevant legal distinction. How does that matter? If maybe both levels of government would matter, then it doesn't matter that he's not part of the national government. Well, I think local government can be implicated in a CAT analysis. However, again, that's assuming that this village chief was part of a local government, that he would be considered a public official. I think in the brief Petitioner discusses, Mr. Lerjanthuk discusses, that he believes the village chief is a political figure. But a political figure and a public official have two very different roles. There are many political figures who are celebrities but don't have a public official role within the government. So I think that the immigration judge was well within her right to make a determination that there was simply not enough evidence to connect the two. And I would note that, as your honors discussed, even assuming the village chief was a public official within that determination, you would still have to show that the village chief instigated the beating or consented or acquiesced to that beating. And there's absolutely no connection between those affiliated with a subordinate of the village chief, those who conducted the beating, and the village chief himself. So there would still need to be... Well, that doesn't sound right. I mean, if someone is working essentially in the line of control of the village chief and they go and beat the person up, why wouldn't we assume that the village chief condoned that? Well, again, the immigration judge is not here to make speculations or assumptions. The immigration judge's role is as a fact finder. And to make assumptions and speculations... And if the IJ made a legal error in assuming that you needed to be part of the national government, then should we remand for reconsideration after correcting that legal error? I don't believe that the immigration judge specified that it had to be the national government. The immigration judge stated he's simply the village chief. There was no evidence that he was part of the Thai government as a whole, which can include local governments affiliated with the national government, obviously as in the states here affiliated with the federal government as a whole. But a village chief, there simply was not enough evidence, nor did Mr. Lujantuk present testimony as to what his role was. If anything, Mr. Lujantuk showed the total opposite, that there was a delineation between the government and a village chief and that he wanted the petitioner's uncle to come work for him as opposed to working for the government. And I think that clear line makes the evidence reasonable for the immigration judge to make that conclusion. If we assume, and I certainly agree with my colleague raises an important point, but if we assume, arguendo, that the village chief is a local government official for all cat and withholding purposes, and when we look at the evidence here, we still are faced with the same issue, are we not, that there is no allegation and certainly no proved allegation that the village chief, whatever his role may have been, shot the petitioner for any protected reason. It was an accident. And with respect to the four, I think four other people, there's no connection at all that they beat him up because of something related to the chief. They beat him up. He doesn't know why they beat him up. So even if we assume that issue, if we assume that the IJ should have treated this village chief as a government official, it doesn't matter because the proof is still missing, is it not? That's exactly correct, and that's why I began with the two issues of nexus and likelihood. But nexus is relevant for withholding. Is that your answer for cat also? For cat, it is not relevant, correct. You don't need to prove a motivation. However, I would note that the immigration judge focuses on the likelihood of torture, which is also important for cat. And as your honors have previously mentioned, this occurred 28 years ago. There is simply not enough evidence to show that more likely than not, that 51 percent chance that he would be tortured if returned to Thailand. We don't know if this village chief is alive, if those individuals who beat him are alive, if they still live in that village, if they still have an interest in targeting him. So, as your honors. The passage of time, though, wasn't part of the agency's – I don't see that as part of the BIA's response to the cat claim, is it? If I could have a moment. I believe the board – I think they just said this thing about it not being part of the government and the government's acquiescence. I believe in the previous paragraph the board does discuss the fact that there is no threat of future persecution 28 years after the incident. Right, but that's for withholding, right? Not for cat? Correct. But in terms of the – and I'm just looking at the board's decision. The board does reference the immigration judge at page 17, and page 17 of the immigration judge's decision is the page that discusses the sentence, this incident happened 28 years ago. We do not know why, what motivated it, or what inspired it. And the court was left to simply make assumptions as to why these individuals would still go after the petitioner 28 years later. I do see my time is up if your honors have any further questions. Any other questions? Thank you very much. Thank you, your honors. So we're going to give petitioner's counsel an extra minute here, so. I appreciate the honor. Just very quickly, I'll address a couple of points. I can't agree with the government more. Immigration judge is not to make any speculations or assumptions. Drunken accident, personal reason, village chief is like a political figure. It's an employment dispute. There is nothing in the record that supports this findings of immigration judge. And regarding the CAD claim, there is no requirement that the government at large should be behind torture for the purpose of CAD claim. And motives of the local government officials who may go rogue don't really matter. Thank you, your honor. Thank you very much. Thank you both. The case just argued is submitted.
judges: M. Smith, Friedland, Rakoff